# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 98-2630WM, 98-2631WM
_____

_____

No. 98-2630WM
_____

Camille Kimbrough,

       Appellee,

v.

Loma Linda Development, Inc.,

       Appellant.

_____

No. 98-2631WM
_____

Rhonda McDowell,

       Appellee,

v.

Loma Linda Development, Inc.,

       Appellant.

On Appeal from the United
States District Court
for the Western District
of Missouri.

_____

Submitted: March 10, 1999

Filed: July 9, 1999
_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and HANSEN, Circuit Judges.
_____

RICHARD S. ARNOLD, Circuit Judge.


Loma Linda Development Corporation appeals from a jury verdict awarding compensatory and punitive damages to Camille Kimbrough and Rhonda McDowell, two of its former employees who brought suit under Title VII. The plaintiffs claimed that Chuck Boggs,[1] the head chef and kitchen supervisor, subjected them to sexual discrimination and sexual harassment, and that Loma Linda failed to take prompt corrective action. The jury awarded compensatory damages to Kimbrough in the amount of $50,000, and to McDowell in the amount of $10,000. Both plaintiffs also received $100,000 each as punitive damages. The District Court reduced the awards pursuant to 42 U.S.C. § 1981a(b)(3)(A) to a total of $50,000 for each plaintiff.

Because this is an appeal from a jury's verdict, we recount the facts in the light most favorable to the judgment. Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996). Loma Linda's appeal does not contest the finding that Chuck Boggs subjected the plaintiffs to gross and abusive sexual harassment, including unwanted groping, constant requests for sex, and inappropriate comments. It does argue, however, that errors in the jury instructions allowed the jury to find it liable without necessarily finding that anyone in its corporate decision-making hierarchy was

_____

[1]Boggs was a co-defendant in the suit below; he did not appear, however, at trial, nor is he part of this appeal.

negligent in failing to stop the harassment. Loma Linda also contends that the District Court[2] erred in giving instructions on "quid pro quo" sexual harassment, because there was insufficient evidence to establish that Boggs was the plaintiffs' supervisor, or that he ever subjected them to any significant tangible employment action based on their failure to acquiesce to his demands. Next, Loma Linda maintains that there was insufficient evidence to support the jury instructions on punitive damages, and that the amount of punitive damages was excessive. Finally, Loma Linda argues that the award of actual damages is unsupported by the record. We affirm.

Kimbrough and McDowell worked as waitresses at a country club owned and operated by Loma Linda. Kimbrough worked from August 1993, to October 10, 1994, with the exception of a maternity leave taken from March to July 1994. McDowell began work in July 1994, and also ended her employment on October 10, 1994. During this period, the operations of Loma Linda were overseen by Bob Dall, the general manager and executive vice-president. Although Dall had authority over other departments, his main responsibility was the day-to-day operations of the clubhouse and restaurant.

I.

Loma Linda urges a number of errors in jury instructions. Some of the instructions about which it now complains were not objected to at trial. In this situation, our review is for plain error only. We find no plain error, and do not believe that the point requires extended discussion. Instead, we turn our attention to those instructions to which proper objections were made, and we discuss in this opinion only those objections that were made at trial. The rule requires that the ground of objection

---

[2]The Hon. Dean Whipple, United States District Judge for the Western District of Missouri.

be distinctly stated to the District Court, and we will not ordinarily reach issues not fairly comprised within the objection as made in the trial record.

Loma Linda did object to the instructions on quid pro quo liability, and we address in this opinion the objection that was properly preserved. This theory of the case was given to the jury by instructions 10 and 16 (one for each plaintiff). These instructions read as follows:

> Your verdict must be for plaintiff . . . if all of the following elements have been proved by the greater weight of the evidence:
>
>> First, Chuck Boggs was supervisor for defendant Loma Linda Development, Inc.; and
>>
>> Second, plaintiff[ ] was subjected to requests from Chuck Boggs for sexual favors; and,
>>
>> Third, such conduct was unwelcome; and,
>>
>> Fourth, such conduct was based on plaintiff['s] [ ] gender; and,
>>
>> Fifth, Chuck Boggs did not give plaintiff[ ] increased hours as plaintiff[ ] had requested; and,
>>
>> Sixth, plaintiff['s] [ ] failure to submit to sexual favors with Chuck Boggs was a motivating factor in the decision to not give plaintiff[ ] increased hours.

Loma Linda claims that there was insufficient evidence to support a finding that Boggs had the authority to give increased hours. We disagree. According to the plaintiffs' testimony, and the testimony of other former employees, Boggs was

responsible for scheduling when and how much the waitresses worked, and what their assignments during their shifts would be. In addition, if one of the waitresses needed to change her schedule, she would make the request to Boggs. Furthermore, Dall himself testified that Boggs had the authority to decide if one of the waitresses was no longer needed and to send her home, and that in his absence, Boggs was left in charge of the restaurant. This is ample evidence to support submitting to the jury the issue of whether Boggs had the authority to affect the plaintiffs' earnings and hours, and we find no abuse of discretion in the District Court's decision so to instruct the jury.

## II.

Loma Linda next complains that the District Court erred in submitting to the jury the issue of punitive damages. Loma Linda objected to instructions on this subject at trial on the ground of a lack of sufficient evidence that it acted with malice or reckless indifference. Punitive damages are available if the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Under instructions 10 and 16, the quid pro quo instructions, the jury was permitted to find Loma Linda liable if it determined that Boggs took any tangible employment actions against the plaintiffs because of their refusal to acquiesce in his sexual demands. This form of vicarious liability has been expressly approved by the Supreme Court. See Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257, 2269 (1998); Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2292-93 (1998). In addition, there was evidence that Dall ratified Boggs's abusive conduct and repeatedly ignored detailed and graphic complaints about Boggs's harassment of the plaintiffs. Kimbrough testified that at one point Boggs placed his hands in flour and then grabbed her behind leaving white hand prints on her black pants. When she went to Dall to complain he responded, "Oh, that looks good on you" (Tr. 178-79). This evidence of Dall's malice and reckless indifference would permit a jury to find Loma Linda liable for punitive damages because of Dall's own state of mind, or because he ratified Boggs's actions.

-5-

See Kolstad v. American Dental Association, __ S. Ct. __, 1999 WL 407481 (U.S. June 22, 1999) (allowing imputed liability for punitive damages under general agency principles); see also Restatement (Second) of Agency § 217C(d). Therefore, the jury was free to consider Boggs's conduct when it set the punishment for Loma Linda's discriminatory practices. It is beyond dispute that Boggs's conduct was sufficiently abusive under any standard to justify submitting the issue of punitive damages to the jury.

### III.

Loma Linda also complains that the amount of punitive damages was excessive. As noted above, Kimbrough was awarded $50,000 in compensatory damages and $100,000 in punitive damages, and McDowell was awarded $10,000 in compensatory damages and $100,000 in punitive damages. These amounts were reduced to a total of $50,000 for each plaintiff in accordance with 42 U.S.C. § 1981a(b)(3)(A). Accordingly, Loma Linda cannot demonstrate that it was prejudiced by the punitive damages award to Kimbrough, since she would have received the statutory maximum from the amount of her compensatory damages alone. With respect to McDowell, it is not clear from the District Court's order reducing the final award to $50,000 how much of that is meant to represent punitive damages and how much is to represent compensatory damages. Assuming a pro rata reduction, the ratio of punitive to compensatory in the revised award would be 10:1. We do not think this amount is excessive as a matter of law, given the abusive and repeated harassment the plaintiffs were subject to at the hands of supervisor Boggs.

### IV.

As a final point, Loma Linda argues that the amount of compensatory damages is unsupported by the record. We disagree. Both plaintiffs testified as to the embarrassment, humiliation, and disgust they felt as a result of Boggs's harassment.

Boggs seemed to take special delight in verbally harassing the plaintiffs in front of other staff or patrons of the country club, which added to the humiliation. Both plaintiffs testified that his harassment affected their marriages, caused them constant stress, and eventually made them quit their jobs.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.